## THE CITY OF BURLINGTON v. QUICK ET AL.

1. **Municipal Corporations**: IMPROVEMENT OF STREETS: ASSESSMENT OF SPECIAL TAX. A city not only has the right to make improvements upon a street and reimburse itself for the expense thereby incurred by levying a special tax upon abutting property owners, but it also has the right to prescribe the mode in which the tax shall be assessed.

2. ———: ———: ———. Where the city council ordered an improvement of a street and the levy of a special tax upon abutting property owners therefor, and directed the auditor to ascertain the amount of such tax by dividing the whole expense by the number of front feet abutting the improvement, the result to be the assessment upon each front foot of property, *held* that the levy and assessment of the special tax was made by the council, although the auditor in fact ascertained the amount to be collected from each property holder.

3. ———: ———: LIEN OF TAX. Section 478 of the Code, making the liability for such special tax a lien upon the property of the abutting owner, is not in conflict with the constitution.

4. ———: ———: EFFECT OF IRREGULARITIES. If the improvement for which the city levies a special tax is such as the statute authorizes it to make, any error and irregularity in the manner of proceeding by the city, or any officer thereof, will not defeat a recovery for the proper proportion of the value of the work from the abutting owner.

5. ———: ———: PAYMENT BY THE CITY. The statute does not require that the city shall institute its action against the abutting owner before it pays the contractor for making the improvement.

*Appeal from Des Moines Circuit Court.*

WEDNESDAY, DECEMBER 5.

ACTION in equity to recover certain sums of money for grading, curbing, guttering and macadamizing Marshall street, in the city of Burlington. A judgment and decree was entered in favor of the plaintiff, and the defendants appeal.

*Hall & Baldwin,* for appellants.

*Samuel K. Tracy,* for appellee.

SEEVERS, J.—This action is brought under section 478 of the Code, which, among other things, provides: "Such charge (for the matters referred to in the petition) may be collected and such lien enforced by a proceeding in law or equity, either in the name of such corporation, or of any person to whom it shall have directed payment to be made."

The city, by ordinances and a resolution duly passed by the council, directed the improvement to be made. It was advertised and let to certain bidders, and when the work was finished the city, having, as it is claimed, assessed in the manner provided by ordinance the amount to be paid by each owner of abutting property, paid the amount due the contractors, and this action is brought to recover the amounts so paid, assessed to and due from each property owner. The several questions urged by counsel will be considered in the order made.

I. It is substantially conceded the defendants are liable to the extent claimed, if for anything. But it is insisted the assessment of the amount due from each defendant should have been ascertained and made by the city council instead of the city auditor, by whom the assessment was in fact made; the argument being that, under the statute, such power is vested in the council, and, being an exercise of the taxing power, it cannot be dele-

1. MUNICIPAL corporation: improvement of streets: assessment of special tax.

gated, and that if the ordinances of the city authorize the auditor to make the assessment such ordinances are void.     In considering this question it is proper to concede that all the steps requisite to render the defendants liable have been duly and properly taken by the city.     Whether there was passed by the council a proper resolution authorizing the improvement to be made, or whether there was a sufficient advertisement, or whether the work was properly let, or whether the assessment was unconstitutional, cannot affect the question under consideration.

The power of the city to make the improvement and assess the expense on owners of abutting property is derived from three sections of the Code.     Sec. 466 provides that the city shall have power to curb, pave, gravel, macadamize and gutter any highway or alley therein, and levy a special tax on the lots and parcels of land fronting on such highway to pay the expenses of such improvement; Sec. 467 gives the power to repair sidewalks and assess the expense thereof on the property in front of which the repairs are made, and Sec. 478 provides that "each municipal corporation may, by general ordinance, prescribe the mode in which the charge on the respective owners of lots or lands, and on the lots or lands, shall be assessed and determined for the purposes authorized by this chapter.     Such charge, when assessed, shall be payable by the owner or owners at the time of the assessment personally, and shall also be a lien upon the respective lots or parcels of land from the time of the assessment."

If sections 466 and 467 stood alone, it might be claimed with a considerable degree of propriety the assessment could only be made by the council.     At least, under the doctrine of strict construction that prevails in this class of cases, there would be serious doubt whether such power could be delegated to the auditor, and yet, if the duty to be performed was merely clerical, it would seem the auditor could better perform it than a city council composed of fourteen members.     But these sections must be construed with reference to Sec. 478, or rather all three sections must be read together, and construed as if the matter in all was contained in only a single section.     If this

be done, it will be seen that the council has the power to levy the special tax, and also to prescribe the "mode in which the charge (special tax)     *     *     shall be assessed."

The abstract shows that the city, by a general ordinance, provided that the "city council may at any time, by resolution, order the improvement of any street,"     *     * and that such a resolution was passed ordering the improvement in question, which provided "that the costs and expense thereof be levied and assessed as special taxes upon the property abutting on the streets." The council therefore ordered the levy and assessment. But the fixing of the amount to be paid by each owner was done by the auditor under a general ordinance which provided that "in making the assessment, the recorder (auditor) shall estimate the cost of the whole improvement, and divide it equally by the number of feet front of the real estate abutting the portion of the street or alley upon which the improvement shall have been made; the amount so found shall constitute the assessment of each front foot abutting on said improvement."

By the resolution the council did in fact levy and assess the cost of the improvement as a special tax, and delegated the power to apportion the whole cost or rather the amount levied and assessed among the several owners of abutting property, in accordance with the number of feet front owned by each.

This the council could well do, and find ample authority therefor in the statute. What was done by the auditor was merely a clerical duty. This assessment was made and based by the auditor on the estimates of the city engineer, and the estimates on the contracts and prices therein fixed, and was at so much per front foot for the improvement of the street on which the property assessed abutted.

At the time the assessment was made there were two ordinances in relation thereto, the one under which the auditor acted, and another providing that the council should by resolution levy and assess these special taxes, and it is insisted the assessment should have been made by the council under the latter ordinance. If such ordinance covers the clerical duty performed by the auditor, then there are two ordinances upon

the same subject, and the apportionment between owners of abutting property could be well made by either the council or auditor. If done by the council, then the auditor has no duty to perform in the premises, but if omitted for any reason by the council, then it may be done by the auditor. Both these ordinances can well stand together, and it is our duty to so construe them unless the apparent conflict is irreconcilable. But there is no real conflict.

II. A decree was entered making the amounts found due a lien on the respective lots and a personal judgment was also rendered against the respective owners. It is insisted that " any law or ordinance which creates a personal liability for local special assessments is unconstitutional." Sec. 578 of the Code, above quoted, it will be seen expressly authorizes just such a judgment as was rendered. Is such a law unconstitutional? Counsel have not cited any provision of the constitution with which the statute conflicts. Nor have we been cited to any adjudicated cases, except two, in which it is claimed such a statute has been held to be unconstitutional. One of these is *Nunan v. Smith*, 50 Mo., 529. An examination of that case will show the ruling was based on the ground that the statute under which it was claimed did not authorize a personal judgment. The other case is *Palmer v. Taylor*, 31 Cal., 240. This decision is based on a provision in the constitution of California, which is not contained in the constitution of this state. It is not applicable. In Cooley on Taxation, 472-3, it is said: "But the practice of making these assessments a personal charge against resident owners has been almost universal. The English statutes go so far as to make them a personal charge against " the present or future owner of the property assessed until paid." In the United States personal assessments of this nature have been enforced in a great number of cases. How much of this may be due to the fact that the right to make a personal assessment was not contested, can only be a matter of conjecture; but at present it must be conceded the overwhelming weight of the authority is in favor of the right." In support of this view many authorities are

3. ——: ——:
lien of tax.

cited.   In some of which, at least, the question under consider-
ation was directly raised.

We are content to follow what we recognize as the decided
weight of authority, without attempting to vindicate its cor-
rectness.

III.   Several questions are presented which will be consid-
ered together.   1. · It is insisted that the resolution ordering
the improvement embraced two classes of work.
4. —: —:
effect of ir-
regularities.   One being contemplated in Sec. 465 of the Code, and
the other in Sec. 466.  The former required a vote of two-thirds,
and the latter three-fourths of the council, before the improve-
ment could be ordered.  By reason of this commingling of these
two  classes in the same resolution, it is insisted the resolu-
tion was not legally passed, and no assessment could be based·
thereon.   2.   It is claimed the resolution is illegal and inef-
fectual because it embraced and combined parts of several
streets instead of a single or a part of a single street.'  3.   Be-
cause, embracing as it does several streets and parts of streets,
the limitation requiring a three-fourths vote to secure the pas-
sage of the resolution was evaded.  The argument being that
it cannot be said the necessary vote would have been secured.
if the resolution had been limited to but one street, or if there
had been a resolution providing for the improvement of each
street.   4.   Because it is contemplated that the cost of the
whole improvement may be assessed upon the property abut-
ting on the whole extent of the street improved, equally, al-
though one portion of the street or streets may be more expen-
sive to improve than another.   5.   Under the resolution con-
tracts could not be let to the lowest bidder.   6.   The contracts
were let, and different prices were paid for the work, and parts
of more than one street were let on the same bid for both, and
were included in the same contract.

Conceding these several propositions to be true, they are
each supported in an ingenious and able argument, and some
of them at least under the decisions of this court seem to be
meritorious.  See *Hager v. Burlington*, 42 Iowa, 661; *Starr
v. Same*, 45 Id., 87, and cases there cited.

It is proper attention should be called to the fact: *first*, that

there were fourteen members of the council present, all of whom voted for the resolution, and that it is not claimed the resolution did not receive a three-fourths vote of the members constituting the council; and, *second*, that the assessments were based on the estimates for the improvement of each street. For instance, it is sought to recover of these defendants alone for the improvement of Marshall street.   See, also, *French v. Burlington*, 42 Iowa, 614.

. The statute under which this action is brought, Code, § 479, provides: "In any such proceeding, where the court trying the same shall be satisfied that the work has been done, or materials furnished, which, according to the true intent of the act would be chargeable upon the lot or land through or by which the street, alley or highway improved, repaired or lighted may pass, a recovery shall be permitted, or a charge enforced to the extent of the proper proportion of the value of the work or materials which would be chargeable on such lot or land, notwithstanding any informality, irregularity or defect in any such municipal corporation or any of its officers."

This statute was held not to be applicable in *Starr v. Burlington*.   In the present case the resolution ordering the improvement was passed in October, 1874.   This being after the adoption of the Code, this case is within the statute and the effect thereof is for the first time before this court for determination.

The improvement has been made.   It is such as the city was authorized to have done.   The determination of the city authorities is conclusive, and not the subject of judicial review, that the improvement was necessary and required for the convenience, comfort and welfare of the city and the inhabitants thereof.   The statute is broad, equitable and remedial, and should not receive a narrow or strained construction.   On the contrary it should be so construed as to carry out the object, intent and spirit the General Assembly evidently had in view in its enactment.   If the improvement is such as the city was authorized to make, according to the true intent of the law, then all errors and irregularities should be disregarded and a recovery permitted for the proper proportion of the value of

the work from the abutting property owner. The amount sought to be recovered is in no manner assailed as too large, nor is there the slightest evidence of any oppression except what may be claimed from the act done. In view of this statute we are not prepared to say that any of the matters hereinbefore alluded to should be permitted to defeat a recovery.

IV. It is finally urged that under the contracts the city was under no obligation to pay, but was only bound to enforce its ordinances requiring the defendants to pay for the benefit of the contractors, and instead of so doing the city has paid for this improvement out of the general revenue of the city. We have seen, however, that section 478 of the Code expressly authorizes the city to bring this action, and the city having paid the contractors no one else of course could do so. The statute by no means provides that the action by the city must be brought before it pays the contractor. On the contrary, the strong implication is that such action could only be brought after payment by the city.

5. ——: ——:
payment by
city.

AFFIRMED.