58 N.W.2d 831 (1953)
CRESS
v.
STATE TAX COMMISSION.
No. 48267.
Supreme Court of Iowa.
June 9, 1953.
Leo A. Hoegh, Atty. Gen., Henry W. Wormley, Sp. Asst. Atty. Gen., and George Cosson, Jr., Director of Property Tax Division, Iowa State Tax Commission, Des Moines, for appellant.
Walter I. Wolfe, of Logan, and Lloyd Thurston, of Osceola, for appellee.
THOMPSON, Justice.
This appeal presents the sole question: Was Merton W. Cress, plaintiff's deceased husband, a soldier of the Philippine Insurrection, within the meaning of paragraph 2 of section 427.3 of the Codes of 1946 and 1950, I.C.A.? That he served in the United States Army from January 11, 1902, until his honorable discharge on January 10, 1905, and that plaintiff, as his unmarried widow, is entitled to the exemption under section 427.4 if he would have been so entitled if living, are matters not in dispute. In effect, only legal issues are presented. *832 We must determine the meaning of paragraph 2 of section 427.3, the material parts of which are set out herewith:
"427.3 * * * The following exemptions from taxation shall be allowed:

* * * * * *
"2. The property, not to exceed eighteen hundred dollars in taxable value, and poll tax of any honorably discharged soldier, sailor, marine or nurse of the war with Spain, Tyler Rangers, Colorado volunteers in the war of the rebellion, 1861 to 1865, Indian wars, Chinese relief expedition or the Philippine insurrection."
Merton W. Cress enlisted in the United States Army at Sioux City, Iowa, on January 11, 1902. He served in the United States until August 16, 1902, when with his unit he left San Francisco for the Philippine Islands, arriving on September 16, 1902. He remained there until September 15, 1903, returning to San Francisco on October 11, 1903. The remainder of his service was in the United States. He died some time before the commencement of this action.
At the time of his enlistment there was an insurrection against the government and authority of the United States in the Philippine Islands. On July 4, 1902, the then President of the United States issued an Amnesty Proclamation, shown in the record as Exhibit 6, the material part of which is this:
"Whereas the insurrection against the authority and sovereignty of the United States is now at an end and peace has been established in all parts of the archipelago, except in the country inhabited by the Moro tribes, to which this proclamation does not apply."
Veterans' Regulation No. 10, found in Section 1114, Military Laws of the United States, as promulgated in Executive Order No. 6098, March 31, 1933, 38 U.S.C.A. following section 726, pleaded by plaintiff and admitted in defendant's answer, says:
"The beginning and termination dates of the wars shall be: * * * the Philippine Insurrection, August 13, 1898, and July 4, 1902, but as to engagements in the Moro Province, the ending date shall be July 15, 1903".
It will be noted that Merton W. Cress enlisted and served in the United States army, but not in the Philippines, for some months before the proclamation declaring the end of the insurrection in all parts of the islands except the Moro province. He did not serve in the Philippines until after July 4, 1902, which the proclamation and the executive order above referred to fix as the end of the insurrection except for the Moro country. He did serve in the Philippines for nearly ten months before the termination of the trouble, and its official ending, in that part of the archipelago inhabited by the Moro tribes.
I. The defendant Tax Commission in its brief and argument states its position thus: To qualify as a soldier of the Philippine Insurrection it must be shown that the soldier served as a member of the armed forces within the islands during the time of the insurrection; service within the dates of the insurrection but outside of the area of the Philippines will not qualify a veteran or his widow for exemption; service within the area of the islands but outside the dates of the insurrection will not so qualify them; there is no evidence that Merton W. Cress ever served in the Moro province. The plaintiff contends that the fact Cress was a soldier in the United States army during the time, or any part of the time, of the insurrection, even though not actually in the Philippines before its termination, is in itself sufficient to qualify him, and his widow under section 427.4, for the benefits of the exemption provided by paragraph 2 of section 427.3 above quoted.
In plain language, the question to be resolved is, how close to the fighting must Cress have been to be entitled to the exemption? It will not be disputed that honorably discharged soldiers of the Mexican War, the Civil War, the Spanish-American War, or the First or Second World Wars qualify for exemption benefits, solely upon proof they were in the United States military service during the times of the conflicts. Many of these veterans *833 did not leave the continental United States, yet their status as soldiers of those wars within the meaning of section 427.3 has never been challenged. But the defendant Tax Commission thinks there is a distinction between those wars and the Philippine insurrection, and that the soldier qualifies only if he comes within the limitations as to time and location set forth in their contentions above. Direct authority on either side is entirely lacking. We know that taxation is the rule and exemption the exception, and the taxpayer claiming an exemption is held to strict proof that he comes within the statute. Lamb v. Kroeger, 233 Iowa 730, 733, 8 N.W.2d 405; Readlyn Hospital v. Hoth, 223 Iowa 341, 272 N. W. 90. The problem is, therefore, to determine whether section 427.3 gives plaintiff a right to exemption when considered in the light of the strict construction rule above set forth.
We think a fair construction of the statute as applied to the facts in this case shows plaintiff's claim to be well founded. We do not determine whether the Philippine insurrection is in the same category as the Mexican, Civil, Spanish-American, and First and Second World Wars so far as that the right to exemption is good to any one in the service during the time of their duration without regard to where he served. It may be noted in passing that the statute seems to create two classes of exemptions, or perhaps it should be said two categories which form the basis for exemptions: One, service in a certain conflict; and two, service in a certain unit. Thus, in section 427.3, we find listed the war with Spain, the Indian wars, and the Philippine insurrection, where the determining factor is the war itself. Also listed are the Chinese relief expedition, Tyler Rangers, and the Colorado volunteers in the war of the rebellion. Here the definitive basis is service in a particular unit or group of units. In the latter case, of course only service in the particular organization or expedition would qualify; but when the test is service in a particular war, or insurrection, or perhaps police action, can we say the soldier is not qualified unless he has actually been in combat, or at least in the particular country, or province, where and at the time the fighting was in progress? What, then, of the soldier in the service of supply who may be hundreds, or even thousands of miles away, but engaged in creating or forwarding munitions to the combatants? What of the soldier who enlists knowing that he may be sent to the front at any time, apprehending the dangers of battle for weeks, or months, but who, through fortuitous circumstances does not find himself eventually called upon to take part in actual battle? Of course we must interpret the statute according to its language, but in so doing we should illuminate our thinking by the light of reason.
However, we do not find it necessary to decide whether any soldier who was in the United States army during the duration of the insurrection, even though remaining in the United States, thereby qualified for the exemption under our statute. The fact is that Cress was in the Philippines before the insurrection there was entirely terminated. How extensive the fighting was in the Moro province, what if any part he had in it, the record does not show. But even if we were to adopt the theory of the defendant, that he must have been in the islands during the time of the insurrection, we would be unable to deny his widow exemption. We are not disposed to say that a soldier who was in the very country where an insurrection was in progress, even though he may not have been in the exact province, or county, or district of the actual combat, was not a soldier of that insurrection. Perhaps he was in the service of supply; perhaps he was in the tactical or strategic reserve; certainly he was subject to close and immediate call. It may also be worthy of observation that the trouble in the Moro province was of sufficient gravity the President felt the insurrection was not ended there, and there was no law other than that of superior force to prevent the unregenerate Moros from carrying the war into other parts of the Philippines if their military strength permitted. Wars have a tendency to spread. We hold that, under the circumstances shown here, Merton W. *834 Cress was a soldier of the Philippine insurrection, and entitled to tax exemption as such. We do not decide exactly how close to the actual combat a soldier must be so that it can be said he was a soldier of that particular conflict; only that, here, he was close enough, during the time when at least a part of the insurrection was still in progress.
II. The exact point upon which our decision turns, as set out above, although within the pleadings and the evidence and so properly raised in the trial court, is not stressed, if indeed it is argued at all, by the plaintiff in the briefs. Her counsel contends that the fact Cress was in the army, even though still in the United States, while the insurrection was existing, is sufficient, and makes little if any reference to the survival of at least a part of it after he arrrived in the Philippines. But, while in a civil case such as this we are limited to a consideration of the errors assigned by the appellant if we are to reverse, if the record shows a sound basis for the holding of the trial court even though the ground therefor is not argued by the appellee, we should affirm. We have affirmed cases in which no argument was filed by the appellee, or in which it was stricken. Davis v. Huber Manufacturing Co., 119 Iowa 56, 59, 60, 93 N.W. 78; Covert v. Town of Lovilia, 167 Iowa 163, 168, 169, 149 N.W. 67.
III. It is urged that we should give much weight to an opinion of the attorney general of Iowa, dated July 6, 1942, which quotes the official United States statutes and regulations fixing the dates of the Philippine Insurrection as "August 13, 1898, to July 4, 1902, but as to engagements in the Moro Province the ending date shall be July 15, 1903;" and holds that "the discharge from the military forces should show service within the dates heretofore set forth and also some participation in * * * the Philippine Insurrection." We have recognized that administrative interpretations of statutes are entitled to much weight. State ex rel. McElhinney v. All-Iowa Agricultural Association, 242 Iowa 860, 48 N.W.2d 281, and cases cited. But the rule has no application here; first, because we think it sufficiently appears the soldier did serve within the meaning of the statute and of the opinion; and second, because another opinion of the attorney general, dated April 12, 1933, held that a soldier was entitled to the benefit of the exemption as a veteran of the Philippine Insurrection even though he never reached that country. This contradictory "administrative interpretation," if such, was in force for almost as long as the opinion of 1942, and removes any weight from defendant's argument at this point.
Affirmed.
All Justices concur, except LARSON, J., who takes no part.